**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| 839 EAST 19th STREET, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-cv-1238-M |
| | § | |
| CITIBANK, N.A., | § | |
| A National Banking Association, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment, filed by Defendant Citibank, N.A. [Docket Entry #34] and the Motion for Partial Summary Judgment, filed by Plaintiff 839 East 19th Street, LP [Docket Entry #37]. For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

I.     PROCEDURAL HISTORY

This dispute centers on whether Defendant was required to release to Plaintiff insurance proceeds under a deed of trust. On January 18, 2012, the Court granted Defendant's Motion to Dismiss all of Plaintiff's claims, except for breach of contract [Docket Entry #23]. Plaintiff later attempted to file an Amended Complaint to add additional claims and reassert the dismissed claims [Docket Entry #26], but the Court denied Plaintiff's attempt to replead on June 11, 2012 [Docket Entry #32], leaving only the breach of contract claim. Each party moves for judgment as a matter of law on the issue of liability under the deed of trust [Docket Entries #34 and #37].

## II.    FACTUAL BACKGROUND

The relevant facts are largely undisputed.  On January 26, 2007, Plaintiff obtained a loan from Defendant in the amount of $5,040,000.00 (the "Loan"), and signed a promissory note payable to the order of Defendant (the "Note"). (Pl.'s App. 65–74, Def.'s App. 4–14)  Plaintiff used the proceeds of the loan to purchase a multi-family property located in Houston, Texas (the "Property") for $6,606,000.00. (*Id.*)  Plaintiff paid roughly $1,560,600.00 in cash towards the purchase price. (*Id.*) In addition to the Note, Plaintiff signed a Deed of Trust, Assignment of Rents, Security Agreements, and Fixture Filings. (Pl.'s App. 75–107, Def.'s App. 378–99)

The Deed of Trust required Plaintiff to purchase and maintain commercial general liability insurance coverage for the Property, at its own expense, with all insurance proceeds assigned to Defendant until full satisfaction of the Loan. (*Id.*)  The Deed of Trust also included a "loss payable to lender" clause, under which all insurance proceeds were to be delivered to, and remain in the possession of, Lender as further security for Borrower's performance under the Note and Deed of Trust.[1]  (*Id.*)  Paragraph seven of the Deed of Trust sets forth how insurance proceeds from the mandated insurance policies were to be processed and disbursed between Borrower and Lender.  It provides:

> The amount received by Lender pursuant to this Security Instrument under any insurance policy, or in connection with any condemnation for public use of the Property, or for injury or damage to the Property, or in connection with the transaction financed by the Loan secured hereby (collectively, the "Proceeds"), ***at the option and in the sole discretion of Lender***, and without regard to the adequacy of Lender's security, may be (a) applied by Lender upon any indebtedness secured hereby and ***in such order as Lender may determine***, or (b) without reducing the indebtedness secured hereby, used by Lender or, with Lender's express prior written consent, by Borrower to replace, restore, or reconstruct the Property to a condition satisfactory to Lender, or (c) released by

---

[1] The Deed of Trust provides, in relevant part: "Each policy of insurance…shall be provided through such insurance companies, as may be satisfactory to Lender, with ***loss payable to Lender***, and shall, if required by Lender, be delivered to and remain in the possession of Lender as further security for the performance of Borrower under this Security Instrument." (Pl.'s App. 79–80) (emphasis added)

Lender to Borrower, or (d) divided by Lender in any manner among any such application, use or release.  No such application, use or release *shall cure or waive any default* or notice of default hereunder or invalidate any act done pursuant to such notice (*or alter the amount of any payment provided under the Note*, this Security Instrument, or any other Loan Document or *postpone or extend the due date of any payment* due under the Note, this Security Instrument or any other Loan Document).

(Pl.'s App. 75–107, Def.'s App. 378–99) (emphasis added)  Option (b) is mandatory *only if* the terms and conditions of another clause of the Deed of Trust, the "Restoration Clause," are met, as determined by Lender in its reasonable judgment. (*Id.*) Failure to meet any one of the conditions set forth in the Restoration Clause relieves Lender of the obligation to provide Proceeds to Borrower for repair purposes under option (b). (*Id.*) The terms and conditions of the Restoration Clause are, in relevant part:

> (ii) the Improvements affected by such injury, damage or condemnation shall be replaced, restored or reconstructed to at least the same condition as the Improvements in existence on the Property immediately prior to the injury, damage or condemnation, in full compliance with all applicable zoning, building, health and safety, and other laws, ordinances and governmental requirements applicable to the Restoration;

> (iii) the plans, specifications, cost breakdown, architect and engineering agreements, construction contracts, construction schedule, contractors, major subcontractors, and any payment and performance bonds required by Lender, *shall be approved by Lender in its reasonable discretion*;

> (vi) Lender shall receive satisfactory evidence that (a) the proceeds of existing rental insurance payable on account of the damage or destruction together with the net cash flow from the undamaged portions of the Property will be sufficient to pay debt service on all indebtedness secured by the Property during the full period of Restoration, (b) the continued use of the Property upon completion of Restoration is economically feasible and will be in full compliance with all applicable laws and ordinances, (c) all leases of the Property which Lender may require to be and remain in place following completion of the Restoration will be in full force and effect after such completion, and (d) Restoration will be completed within a reasonable time and in any event no less than six (6) months prior to the Final Payment Date (as defined in the Note); and

(vii) *no default under the Note*, this Security Instrument or any other Loan Documents *shall have occurred and be continuing*.

(*Id.*) (emphasis added) Moreover, "in no event shall Lender's consent to or approval of any Restoration be deemed to extend the due date of any payments owing under the Note or any other Loan Document, or otherwise be construed to cure or waive any default of Borrower under the Note." (*Id.*)

After executing the Note and Security Instrument, Plaintiff obtained insurance on the Property through Lexington Insurance Company ("Lexington"). (Pl.'s App. 10) On September 13, 2008, Hurricane Ike struck the Houston area, damaging the Property. (Pl.'s App. 108–09, Def.'s App. 60) As a result, Plaintiff filed an insurance claim with its insurer, Lexington, and Lexington distributed approximately $100,000.00 to Plaintiff.[2] (Pl.'s App. 108–09) Plaintiff used these proceeds to initiate emergency repairs on the Property. (Pl.'s App. 135)

Plaintiff made its required loan payments to Defendant only through October 31, 2009, going into monetary default on the Note. (Pl.'s App. 19) By a letter dated January 28, 2010, Defendant notified Plaintiff of its default and gave notice that if the Note was not brought current by February 8, 2010, the full balance would be accelerated and become fully due and payable. (Pl.'s App. 12, Def.'s App. 26–29) By a letter dated March 26, 2010, Plaintiff was further notified that its failure to bring the Note current had resulted in an acceleration, and that failure to pay the full amount due by April 5, 2010, would result in the initiation of foreclosure proceedings. (Pl.'s App. 15, Def.'s App. 30–34)

On May 24, 2009, July 14, 2009, and September 4, 2009, three fires had damaged two buildings at the Property. (Pl.'s App. 153, 229) After the fires damaged the Property, Plaintiff submitted claims for fire damage to Lexington, and Lexington released several checks to

---

[2] Plaintiff filed suit in federal court in Houston against Lexington for allegedly failing to provide appropriate proceeds for the damage caused by Hurricane Ike to the Property. (Pl.'s App. 2)

Defendant, totaling approximately $604,054.77.  (Def.'s App. 316–321) Lexington also later sent a check to Defendant in the amount of $190,208.01 ("Additional Proceeds"), which was sent after July 6, 2010, the date the property foreclosed.[3] (Def.'s App. 402–03)  Of the $604,054.77, Defendant distributed approximately $153,500.53 to Plaintiff for repairs, holding approximately $450,554.24 in escrow. (Pl.'s App. 108–09, 172–73)  On May 17, 2010, Plaintiff submitted a repair plan to Defendant pursuant to the Restoration Clause, requesting additional disbursement of the escrowed funds.  (Pl.'s App. 113–125)

On May 26, 2010, Defendant executed a Note Purchase Agreement (the "NPA"), by which Defendant sold the Note to JRG Capital Investors I, LLC ("JRG") for $1,650,000.00.[4] (Def.'s App. 344–365)  On May 28, 2010, Defendant notified Plaintiff that the Restoration Clause was not available to Plaintiff because it was in monetary breach, and that Defendant was additionally rejecting Plaintiff's repair plan because it did not comply with the Restoration Clause. (Pl.'s App. 126–28, Def.'s App. 38–41)  On June 4, 2010, the NPA transaction closed, and Defendant applied the remaining insurance proceeds of $450,554.24 in the escrow account as a credit against the total debt owed by Plaintiff under the Note. (Def.'s App. 22, 337)   On June 9, 2010, Plaintiff provided Defendant with a revised repair plan, in response to which Defendant notified Plaintiff that Defendant no longer owned the Note. (Pl.'s App. 207–17)   On July 6, 2010, JRG initiated a non-judicial foreclosure action, and it purchased the Property for $1,650,000.00.  (Pl.'s App. 153)   Plaintiff did not bid at the foreclosure sale. (Def.'s App. 196)  As a result of the foreclosure, Plaintiff lost all of its equity in the Property.

Plaintiff contends that Defendant breached the Restoration Clause by refusing to release

---

[3] While the check is dated August 13, 2010, Defendant asserts that it did not receive it until January 25, 2011. Nevertheless, both parties agree the Additional Proceeds were sent by Lexington after July 6, 2010, the date of the foreclosure on the Property.
[4] Under the Deed of Trust, Defendant could sell or assign the Note and Deed of Trust with no notice to, or consent of, Plaintiff. (Pl.'s App. 75–107, Def.'s App. 378–99)

to Plaintiff all or a portion of (1) $450,554.24 in escrowed insurance proceeds and (2) $190,208.01 sent by Lexington to Defendant after the foreclosure that occurred on July 6, 2010. In response, Defendant maintains that it was not required to provide Plaintiff with any more Proceeds because Plaintiff was in breach of the Note and the Deed of Trust, having failed to pay the Note and to restore the Property to its pre-hurricane condition.  Due to Plaintiff's defaults, Defendant argues that Plaintiff is not entitled to relief under the Restoration Clause, thereby allowing Defendant to apply the escrowed funds to Plaintiff's indebtedness and retain any Additional Proceeds after the foreclosure as a credit against the amount Plaintiff owed under the Note.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). If a reasonable jury could return a verdict for the non-moving party, then there is a genuine dispute of material fact. *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine dispute of material fact. *See* Fed.R.Civ.P. 56(a); *Anderson,* 477 U.S. at 250; *Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1187 (5th Cir. 1991). In determining whether a genuine dispute of material fact exists, "factual controversies are construed in the light

most favorable to the non-movant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625 (citation omitted).

## IV.   ANALYSIS

As noted above, the relevant facts are largely undisputed.   Resolving the summary judgment motions turns on the legal question of whether there is a genuine issue of material fact as to Defendant's liability under the Deed of Trust.  The Court concludes that, as a matter of law, Defendant did not breach the Deed of Trust as to its application or retention of any of the Proceeds.

In Texas, the essential elements of a breach of contract claim are:[5]  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.[6] *Mullins v. Testamerica, Inc.,* 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal,* 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).   The parties do not dispute the validity of the Note and Deed of Trust. The issue before the Court is whether Defendant's conduct, which is also not disputed, constituted a ***breach*** of the terms of the Deed of Trust, particularly the Restoration Clause.

### 1.  Release of $450,554.24 in Escrowed Insurance Proceeds

The terms of the Deed of Trust regarding the disbursement of Proceeds are clear and unambiguous.  For the time period when Defendant received the $450,554.24 in question, the undisputed summary judgment evidence shows that Plaintiff was in monetary default. (Pl.'s App. 19, Def.'s App. 11, 14)

---

[5] A deed of trust is a mortgage with a power to sell on default and is governed by the same rules of interpretation that apply to contracts. *See Starcrest Trust v. Berry*, 926 S.W.2d 343, 351–52 (Tex. App. —Austin 1996, no writ).
[6] Both parties maintain that Texas law controls in this diversity action. Therefore, the Court applies Texas law.

The provisions of paragraph seven allowing Plaintiff to use insurance proceeds to restore the Property are expressly conditioned on "no default…[having] occurred and be continuing." (Pl.'s App. 81)  At the time Plaintiff requested the Proceeds from Defendant under the Restoration Clause, default was continuing. (Pl.'s App. 19)  Accordingly, Plaintiff was not entitled to receive the Proceeds under the Restoration Clause, and Defendant was not otherwise obligated to release the Proceeds to Plaintiff.  Defendant was contractually entitled to use the Proceeds towards the balance of Plaintiff's indebtedness under the Note.[7]

### 2.  Release of the Additional Proceeds

The Court finds as a matter of law that Defendant did not breach the Deed of Trust when it applied the Additional Proceeds as a credit against the amount Plaintiff owed under the Note. Paragraph six of the Deed of Trust requires that the insurance policies obtained by Plaintiff include a "loss payable to lender" clause in favor of and in a form acceptable to Lender. (Pl.'s App. 79–81, Def.'s App. 383) Plaintiff also assigned to Lender all insurance proceeds from each and every kind of insurance obtained by Borrower related to the Property, until full satisfaction of the loan. (*Id.*)

Plaintiff contends that even if a deficiency remained, as alleged by Defendant, the deficiency was satisfied by the nonrecourse nature of the debt, as outlined in paragraph twenty of the Note.[8] The Court disagrees.  The fact that Defendant may not be able to recover certain monies from Plaintiff under the nonrecourse provisions of the Note does not mean that Plaintiff has satisfied its indebtedness under the Note.  The Fifth Circuit, in interpreting Texas law, noted

---

[7] In light of this finding, the Court need not consider whether Plaintiff met the other terms and conditions of the Restoration Clause.  Specifically, the Court need not reach the issue of whether Defendant exercised reasonable discretion in rejecting Plaintiff's repair plan of May 17, 2010, which would be relevant to whether the third condition of the Restoration Clause was met. The Court also need not decide whether Plaintiff was in non-monetary default due to Plaintiff's alleged failure to keep the property in the condition required by the Deed of Trust.

[8] According to the nonrecourse provisions of the Note, subject to particular exceptions, Borrower is generally not personally liable for the payment and performance of the indebtedness and obligations evidenced or arising under the Note.  (Pl.'s App. 71)

that the term "indebtedness" is a legal term of art describing "[t]he state of being in debt, without regard to the ability or inability of the party to pay the same." *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1320 (5th Cir. 1992) (quoting Black's Law Dictionary). The court went on to note that "[t]he fact that a debt is non-recourse does not change the fact that the debtor is 'in debt' to a creditor." *Id.* Here, Plaintiff does not dispute that even after application of the Proceeds from the foreclosure sale, the amount Plaintiff owed to Defendant under the Note was not satisfied.[9]   Therefore, because a mortgage debt remained outstanding after the foreclosure, Defendant was entitled to the Additional Proceeds under the Note and Deed of Trust.

## V.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendant is entitled to judgment as a matter of law.   The Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.   Final judgment will be entered by a separate order.

**SO ORDERED**.

Dated: October 30, 2012.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[9] While the exact amount unsatisfied under the Note after the proceeds of the foreclosure sale were applied is unclear, the summary judgment evidence demonstrates that there was a deficiency of at least four million dollars. (Pl.'s App. 149)